## UNITED STATES v. INABA et al.

(District Court, E. D. Washington, S. D.   July 21, 1923.)

No. 1085.

1. **Courts ⬤⟾508(2)—Federal court may grant injunction to restrain action by state court when necessary to protect rights of United States.**

Where the United States leased land of an Indian allottee, to which it holds the title as trustee, reserving a lien on the crops for the rent, it may maintain a suit in the federal court to protect and enforce its lien, and the court is not precluded by Judicial Code, § 265 (Comp. St. § 1242), from granting as essential to such relief an injunction restraining the receiver of a state court from disposing of the proceeds of the crops in a suit by other lien claimants, to which the United States is not, and cannot be made, a party.

2. **Courts ⬤⟾508(1)—Federal courts may grant injunction when necessary to exercise jurisdiction.**

Judicial Code, § 265 (Comp. St. § 1242), prohibiting federal courts from granting injunctions to stay proceedings in a state court, must be construed in connection with, and is limited by, section 262 (Comp. St. § 1239), which authorizes such courts to issue all writs necessary to the exercise of their respective jurisdictions.

In Equity. Suit by the United States against S. Inaba and others. On motion by defendants to dismiss bill. Denied.

The question now presented arises upon defendants' motion to dismiss the bill of complaint upon the ground that this court is without jurisdiction to grant the injunctive relief prayed for therein. The pertinent facts are these: An action was commenced in the superior court of Yakima county, Wash., to foreclose a labor lien claimed by the defendant T. Inaba in his own right and on behalf of other labor lien claimants against certain crops grown upon lands in Yakima county, located within the Yakima Indian reservation, which had theretofore been leased by the United States, as trustee, for and on behalf of an Indian allottee, to the defendant S. Inaba. Thereafter this action was instituted by the United States to obtain judgment against the defendant S. Inaba, the tenant under the lease, for rent due the United States as trustee for the lands upon which the crops sought to be subjected to the labor liens in the state court were grown, and to foreclose a landlord's lien on the crops specifically provided for in the lease; the lease having been duly recorded as provided by the laws of the state of Washington. In the action brought in the superior court of Yakima county, L. D. Luce, a defendant herein, was appointed receiver to take possession of and sell the crops involved. In the case pending in this court a temporary restraining order was issued, restraining the receiver from disposing of the proceeds of the crops coming into his possession until the further order of this court.

Frank R. Jeffrey, U. S. Atty., and H. Sylvester Garvin, Asst. U. S. Atty., both of Spokane, Wash.

McAulay & Meigs, of Yakima, Wash., for defendants.

WEBSTER, District Judge (after stating the facts as above). [1] The contention that this court is without jurisdiction to grant the injunctive relief asked is predicated upon section 265 of the Judicial Code (Comp. St. § 1242), which reads:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where

⬤⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

such injunction may be authorized by any law relating to proceedings in bankruptcy."

No case has been cited by counsel, and I have not been able to find any, in which section 265 has been considered in connection with a case wherein the United States, as such, as a proper plaintiff was suing in its own courts to protect its own property, or in order faithfully to perform its duties as trustee of property held by it in trust for others. In the many authorities cited by counsel for defendants, the only case wherein the United States was the moving party is the case of United States v. Parkhurst-Davis Mercantile Co., 176 U. S. 317, 20 Sup. Ct. 423, 44 L. Ed. 485. In that case, however, the Indians, for the protection of whom the government was suing, were Indians concerning whom it was provided by law that:

"Each and every member of the respective bands or tribes of Indians to whom allotments have been made shall have the benefit of and be subject to the laws, both civil and criminal, of the state or territory in which they may reside." 24 Stat. 390, § 6.

The Indians involved in that case had each received patents in fee to their respective allotments under the provisions of the statute quoted. They had also been lawfully authorized by the Bureau of Indian Affairs, prior to the commencement of the action by the government, to trade and do business as licensed traders of the United States. The action brought by the government was for the purpose of enjoining the defendants from enforcing in the courts of the state of Kansas certain claims against the property of these Indian allottees. In that case section 720 of the Revised Statutes (being section 265 of the Judicial Code) was held to apply. It was not a case, however, wherein the United States was suing as trustee for the benefit and protection of Indians under the guardianship of the government, the title to the land in question being held by the government in trust.

The Indians in the Parkhurst Case were sui juris, and able under the law to sue for their own protection; title to their lands being vested in them in fee. For these reasons, we do not consider that case as controlling here. In this case the title to the lands upon which the crops in controversy were grown is vested in the United States, and it is asserting its right to sue in the courts of its own sovereignty for the protection of that property. All the cases to which my attention has been drawn in which section 265 of the Code has been held to apply are cases wherein the jurisdiction of the state and federal courts involved was concurrent.

It is elementary law that the United States cannot be sued without its consent, clearly manifested by an act of Congress. In Stanley v. Schwalby, 147 U. S. 508, 13 Sup. Ct. 418, 37 L. Ed. 259, Mr. Chief Justice Fuller speaking for the court, it is said:

"They [the United States] cannot be subjected to legal proceedings at law or in equity without their consent, and whoever institutes such proceedings must bring his case within the authority of some act of Congress. Such is the language of this court in United States v. Clarke, 8 Pet. 436, 444. The same exemption from judicial process extends to the property of the United States, and for the same reasons. As justly observed by the learned

judge who tried this case, there is no distinction between suits against the government directly and suits against its property."

Again, in Stanley v. Schwalby, 162 U. S. 255, 16 Sup. Ct. 754, 40 L. Ed. 960, the Supreme Court says:

" * * * They [the United States] have never consented to be sued in the courts of a state in any case."

Judge Rose, in his recent work on Federal Jurisdiction and Procedure, published in 1922, asserts that up to that time no such consent had even been given by the government. Since the prior suit in the state court had impounded property in which the United States has an interest or upon which it asserts a lien, must the government subject itself to the jurisdiction of a state court in order to protect its rights? Despite the sweeping language of section 265, we think not. To compel the United States to go into the state courts for the protection of its property clearly would subject it to the jurisdiction of the state tribunals, precisely like any other litigant, and the consequence would be to force the government into a state court by indirection when this could not be accomplished by direction. What process could the superior court of Yakima county employ to bring the United States before it in the case pending in that court? It is suggested by counsel for the defendants that the government might voluntarily intervene in that action. But what officer of the United States is clothed with the legal authority to subject the general government to the jurisdiction of a state court, either by intervention or otherwise? In the case of Stanley v. Schwalby, 162 U. S. 255, 16 Sup. Ct. 754, 40 L. Ed. 960, supra, the United States district attorney, acting under the direction of the Attorney General, attempted to appear in a state court of Texas on behalf of the United States. In considering this matter the Supreme Court in that case said:

"The answer actually filed by the district attorney, if treated as undertaking to make the United States a party defendant in the cause, and liable to have judgment rendered against them, was in excess of the instructions of the Attorney General, *and of any power vested by law in him or in the district attorney,* and could not constitute a voluntary submission by the United States to the jurisdiction of the court."

It seems plain, therefore, that the government could not, in the absence of congressional authorization, intervene as a party to the action in the state court; no officer of the government being clothed with authority to subject it to the jurisdiction of a state tribunal. If defendants' contention in this behalf is sound, this peculiar anomaly presents itself: The United States as such has a right to assert and a solemn duty to perform, which can only be accomplished in the courts of the United States. The right asserted by it, if sustained in law and fact, involves certain property theretofore taken into the custody of a state court. If that property or its proceeds is disposed of by the state court the interest of the government therein will be ignored, and it will be left remediless so far as that property is concerned. Yet the government is powerless in the circumstances, and must for lack of a proper forum in which effectively to sue stand idly by and permit property in which it has an interest, or upon which it asserts a lien, to be dissipat-

ed or placed beyond its reach. In other words, the government in such circumstances has less rights than a private litigant would have. I cannot subscribe to any such doctrine.

That the United States has the right in its own courts to bring such suits as may be necessary and appropriate for the protection of its Indian wards cannot be doubted. U. S. v. Boyd (C. C.) 68 Fed. 580; U. S. v. Winans (C. C.) 73 Fed. 72. Section 24 of the Judicial Code (Comp. St. § 991) provides that:

"The District Court shall have original jurisdiction: * * * First. Of all suits of a civil nature at common law or in equity, brought by the United States, or by any officer thereof authorized by law to sue."

As we have already noted, it is settled law that the judicial tribunals of a state cannot entertain suits in which the sovereign government is sought to be made a party defendant, neither can the property of the government be proceeded against in such courts. So far, therefore, as the interests of the United States, either in its own right or as trustee for its Indian wards, in or to the property impounded in the state court are concerned, that court must be held to be wholly without jurisdiction. It follows, therefore, that the United States, having an interest in the property, may commence and maintain in its own courts such proceedings as may be necessary and appropriate to safeguard and protect its interests, even though such property prior thereto may have been brought within the jurisdiction of a state court for the purpose of adjudicating the rights of private litigants therein, over whom that court has acquired jurisdiction.

[2] Having reached the conclusion that this court has exclusive jurisdiction of this action, the remainder of the problem is of easy solution. Section 262 of the Judicial Code (Comp. St. § 1239) authorizes the United States courts "to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law." It is well settled by the cases that section 265 of the Code must be construed in connection with section 262 thereof. Kline v. Burke Construction Co., 260 U. S. 226, 43 Sup. Ct. 79, 67 L. Ed. ——; Julian v. Central Trust Co., 193 U. S. 93, 24 Sup. Ct. 399, 48 L. Ed. 629; Gay v. Hudson River Electric Co. (C. C.) 182 Fed. 279; Lanning v. Osborne (C. C.) 79 Fed. 657; Sharon v. Terry (C. C.) 36 Fed. 337. In Julian v. Central Trust Company, supra, Mr. Justice Day, speaking for the court, says:

"In such cases where the federal court acts in aid of its own jurisdiction and to render its decree effectual, it may, notwithstanding section 720, Rev. Stat. [section 265, Judicial Code], restrain all proceedings in a state court which would have the effect of defeating or impairing its jurisdiction."

In Ex parte Simon, 208 U. S. 144, 28 Sup. Ct. 238, 52 L. Ed. 429, Mr. Justice Holmes writing, it is said:

"It would be going far to say that, although the Circuit Court had power to grant relief by final decree, it had not power to preserve the rights of the parties until the final decree should be reached."

It will be noted that in this case the court had under consideration the statutory provisions now constituting section 265 of the Judicial

Code. As shedding light on the question, though not directly in point, see Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497.

Upon the whole proposition, therefore, I conclude that, this being an action instituted by the United States for the protection of its Indian wards in respect of property, title to which is held in trust by the government, exclusive jurisdiction thereof is vested in the United States District Court; that, having such jurisdiction, it may in aid and furtherance thereof, under the provisions of section 262 of the Judicial Code, issue writs of injunction, agreeably to the usages and principles of law, even though in the granting of such injunctive relief a receiver theretofore appointed in a state court must be enjoined from disposing of a fund in which the United States asserts an interest, where the granting of such relief is essential to preserve the rights of the parties in the federal court until a final decree shall be reached, leaving to the state tribunal undisturbed power to dispose of the controversy pending before it to the full extent of its first acquired jurisdiction as to all parties properly before it.

The motion to dismiss the bill is denied.

In considering the foregoing question upon its merits, I have not overlooked the fact that, even though this court should be held to be without jurisdiction to grant the injunctive relief prayed for, the motion to dismiss the bill could not be sustained. Clearly this court has jurisdiction to determine the rights of all the parties before it, not including Receiver Luce, even though it would have no power to grant either a restraining order or an injunction. Appreciating, however, that the question considered will certainly arise under the motion to dismiss the temporary restraining order, I have thought it proper to consider the question presented on its merits, having the whole situation in mind.