## UNITED STATES v. HODGE et ux.
### Civ. No. 1130.

United States District Court
E. D. Tennessee, N. D.
Jan. 10, 1949.

Otto T. Ault, U. S. Atty., Chattanooga, Tenn., James M. Meek, Asst. U. S. Atty., Knoxville, Tenn., Ferdinand Powell, Jr.,

Asst. U. S. Atty., Knoxville, Tenn., for plaintiff.

Olen Henderson, Oak Ridge, Tenn., L. B. Bolt, Jr., Knoxville, Tenn., for defendants.

GEORGE C. TAYLOR, District Judge.

This is an action for possession of a dwelling house located at 405 New York Avenue, Oak Ridge, Tennessee, and for damages for the unlawful detention of the use and occupancy thereof by defendants. The matter is before the Court on objection by plaintiff to certain interrogatories of defendant and on plaintiff's motion for summary judgment. The relevant facts dispose of the case.

Defendants were occupants of the premises in suit on January 29, 1948, when they were given notice to vacate. They have defied the notice and continued in possession. An issue raised by the pleadings and not determined by admissions and answers to interrogatories is whether title to the property is in the United States of America or in the Atomic Energy Commission. Defendants aver that the property is under the jurisdiction and control of the Atomic Energy Commission and of Roane-Anderson Company, neither of which has been made a party. They also deny unlawful detention and any liability for damages.

Authority for the occupancy existing January 29, 1948, is in a license agreement between Roane-Anderson Company and the defendant Allan V. Hodge dated December 1, 1947. The agreement provides that the occupancy license is granted on the basis of the licensee's employment at Oak Ridge, Tennessee, with the employer who recommends the license, and shall automatically be terminated by termination of that employment, subject to a 30-day period of grace, "unless an extension of the grace period is specifically granted in writing by the Commission." Defendants do not contend that the Commission has granted them an extension.

At the time the agreement was entered into, defendant Allan V. Hodge was an employee of Roane-Anderson Company. That employment was terminated January 29, 1948. On that date, also, the employee was notified to vacate the premises on or before February 28, 1948. After termination of his employment with Roane-Anderson Company, he obtained employment with a taxicab company, operating at Oak Ridge. His new employer applied to Roane-Anderson Company for inclusion of the premises in a housing quota allotted to that employer. The application was denied. The license agreement contains no provision for transfer of the premises from one employer's quota to that of another. It does provide that the agreement is revocable at the will of the Commission, but that provision has no application, for the reason that termination was under the termination of employment provision heretofore mentioned.

It was not necessary that either Roane-Anderson Company or the Commission be made a party. It is recited in the license agreement, to which defendant Allan V. Hodge was a party, that Roane-Anderson Company was acting as agent for the United States of America in granting the occupancy license. Prior to commencement of this action, Roane-Anderson Company assigned to the United States of America all of its right, title and interest in the property and the license agreement, including the right to possession upon termination of the license. Defendants have not denied the right of Roane-Anderson Company to grant the occupancy. If what they have said amounts to a denial, then their occupancy has been unauthorized from the beginning and a different legal problem is presented. But they do not claim to be trespassers, nor do they claim title.

They entered into occupancy under an agreement which expressly declared that Roane-Anderson Company was acting as agent of the United States of America. The United States could hardly be in a worse position than its agent. Indeed, its position should be better, for it is both the principal of the agent and the assignee of the agent. Defendants have argued that the Commission should have been a party, on the ground that by executive order the property has been transferred to the Commission. Even if that were true, it would

seem wholly irrelevant. In accepting the occupancy, the occupants agreed that upon termination of the license the licensor should have the right to resume possession, by summary proceedings or otherwise, and to remove all persons and property therefrom. The occupancy under this agreement was not a leasehold. No title interest was ever conveyed to defendants, defenses peculiar to eviction under leases are not applicable, and there exists no basis for injecting questions of outstanding title into the case.

The only defense strongly urged by defendants is one advanced in argument and attempted discovery, rather than in regular pleadings. Defendants have served upon plaintiff fifty-one interrogatories, two of which have been answered, the others being objected to. Defendants have sought shelter under an alleged housing policy of the Atomic Energy Commission, or of Roane-Anderson Company, which, they urge, could not be contravened by a license agreement. Even though they have no right to continue the occupancy under the agreement, they insist they have a right to continue under the housing policy. The housing policy, they contend, is the law of the case, and most of their interrogatories are directed at production of documents, letters, copies of speeches, and various data from which a housing policy could be discovered.

It is the Court's opinion that the nature of the interrogatories shows an absence of the genuine purpose and necessity which justify the granting of discovery. A few questions, selected at random, are fairly typical:

"4. How many houses at Oak Ridge are occupied by single unmarried persons or persons not living with their spouses? Give names of their employers * * *

"6. Give the names, employers of, immediate supervisors of, and number of single unmarried women occupying large Type F houses at Oak Ridge * * *

"14. Who is the individual who decides who shall be evicted from housing at Oak Ridge? * * *

"16. How many times within the past two years has the housing policy at Oak Ridge been modified or changed? * * *

"37. Under what provision of the Oak Ridge housing policy does C. M. Winfrey and wife, with no children, occupy a three bedroom, Type F house, at 100 Nixon Road, Oak Ridge? * * *

"38. Under what provision of the Oak Ridge housing policy does Miss Betty Oates, Secretary to C. M. Winfrey, occupy a family size apartment at Oak Ridge?"

While the interrogatories may raise implications of a lack of housing policy, or of housing mismanagement, they do not suggest a source of legal right in favor of defendants. Had there been an executive order establishing a housing policy, it could have been produced in response to a single discovery requirement. This Court has not in the past construed its jurisdiction to include inquiry into the policies or motives of administrative agencies of the Government in the exercise of their functions. The question here is whether the Government is entitled to possession of its house, not whether its agents have been fair or competent in the disposition of housing facilities.

Moreover, the defendant Allan V. Hodge, by his own statements in answer to interrogatories of plaintiff, has effectively disposed of the contention that an existing housing policy gave him a right to disregard his license agreement and continue in occupancy of the dwelling. In answer to plaintiff's interrogatory No. 11, he said: " * * * It was not long after moving into this particular house that everyone in Oak Ridge realized that there was no such thing as a housing policy, let alone a reasonable housing policy. Since housing became available, the alleged policy has been changed on an average of about every six months. Three different companies, the status of which is nebulous, were in charge of housing accommodations. This utter lack of any constructive policy exists at the present time and is the cause of needless confusion and irritation." Inasmuch as he speaks as a person having knowledge, he could hardly be permitted to contradict himself through the medium of counter-

28

interrogatories, or any other form of discovery.

█ It is the Court's opinion that plaintiff has answered all the interrogatories that need be answered and that the objection to further answering should be sustained. The Court is also of the opinion that plaintiff is entitled to immediate and unobstructed possession of the premises in suit and to damages for their unlawful detention and use. Plaintiff's motion for summary judgment should, therefore, be granted. Damages should be limited to the amount of unpaid compensation chargeable to defendants for use and occupancy, computed at the rate provided in the license agreement, until their occupancy is terminated.

Let proper writ and order be prepared accordingly.